STATE OF INDIANA AND THE INDIANA STATE HIGHWAY COMMISSION *v.*
BRYAN TABLER, A MINOR BY HIS NEXT FRIEND, HARVEY TABLER; HARVEY
TABLER, ADMINISTRATOR OF THE ESTATE OF CAROL JOYCE TABLER,
DECEASED; HARVEY TABLER, INDIVIDUALLY AND TERRY P. MCBRIDE

[No. 3-1075A217. Filed October 18, 1978. Rehearing denied November 18, 1978
Transfer denied October 29, 1979.]

*Theodore L. Sendak*, Attorney General of Indiana, *Daniel Lee Pflum*,
Deputy Attorney General, for appellant.

*Thomas B. Dumas, Dumas & Moriarity,* of Rensselaer, *William S. Spangler, David L. Abel, II, Spangler, Jennings, Spangler & Dougherty,* of Gary, *Floyd F. Cook, Cook, Cook, & Welke,* of Kokomo, *Herbert F. Small, Nelson J. Becker, Hanna, Small, Sabatini & Becker,* of Logansport, for appellees.

GARRARD, P.J. — During a light rain on the morning of March 29, 1973, a tractor-trailer loaded with liquid fertilizer was heading east on U.S. Highway 24, and a smaller truck carrying milk bottles and cartons was heading west. Several hundred feet east of the intersection of U.S. Highway 24 and State Road 13, the highway narrows from four to two lanes. The tractor-trailer had gone through the intersection and was travelling at 30-35 mph when it jackknifed as it came out of the four lane section onto the two lane section of Highway 24. It crossed into the westbound lane where it was struck broadside by the smaller truck.

An explosion and fire resulted which killed the 29 year old driver of the milk truck, Carol Tabler. Her nine year old son, Bryan, was pinned in the truck for one and a half hours before rescuers were able to free him. Terry McBride, the driver of the tractor-trailer, escaped from his truck when its windshield was popped out by the explosion.

Both McBride and Bryan Tabler were severely burned. Without detailing the extent of their injuries, we note that Bryan suffered second and third degree burns on 20% of his body. The severity of the burns to his legs required their amputation. He was hospitalized for 4 months during which numerous skin grafting operations were performed. He currently requires physical therapy and will continue to do so, especially in the refitting of prosthetic devices as he grows. McBride suffered burns on 45% of his body, more than a third of which were third degree. His eyelids, part of his nose, eartips, and lips were burned off. His face, hands, arms and upper torso are covered with scar tissue, the aesthetic appearance of which cannot be improved. His hands and what remains of his fingers have limited dexterity and freedom of movement. It is anticipated that their mobility will decrease within the next few years as the result of a form of arthritis associated with extreme burns. McBride was 20 years old at the time of the accident. Like Bryan he was hospitalized for about 4 months and has required extensive skin grafts.

Harvey Tabler, as his son's next friend, as administrator of his wife's estate, and individually, brought an action based on the negligence of McBride against two companies, Chester Inc. and Young Brothers, the lessee and owner of the tractor-trailer. McBride brought an action against the state and the state highway commission alleging that negligent maintenance of the highway caused him to lose control of his truck. Tabler amended his complaint to include the state as a defendant after he entered three loan receipt agreements with the insurer for Chester Inc. and Young Brothers. Chester Inc. and Young Brothers were eventually dismissed and the suits by McBride and Tabler were consolidated.

The jury returned a verdict in favor of all the plaintiffs. However it awarded Harvey Tabler nothing as administrator of his wife's estate. He was awarded $11,000 for loss of services and expenses incurred. Bryan Tabler was awarded $70,000 and McBride received $7,500. The plaintiffs-appellees' motions to correct errors, urging inadequacy of the damages, were granted. Pursuant to Indiana Rules of Procedure, Trial Rule 59(E)(5), appellees were given a new trial solely on the issue of damages unless the state would agree to an additur of $280,000 for Bryan, $150,000 for Harvey Tabler as administrator, and $392,500 for McBride. The jury's award to Harvey Tabler individually was let stand and no argument attacking that portion of the ruling has been advanced on appeal. Accordingly, we leave that judgment undisturbed.

In its findings of fact, the trial court extensively catalogued the type and extent of the plaintiffs' injuries, the care and methods of treatment required, and the degrees of impairment and disability. The court concluded that the damages were grossly inadequate. However, it rejected a new trial on all the issues, stating that retrying liability would be proper only if:

"the court could realistically anticipate that on a retrial of all the issues the defendants would have at least an even chance of a verdict in their favor. Under the circumstances presented by this case this court does not hold that view."

The state has taken an appeal raising several issues, the most crucial of which is the propriety of granting a new trial on damages only. The state argues that the jury's verdict was the result of a compromise on

the issue of liability and, therefore, a new trial must be had on all the issues. In support of this it concedes the inadequacy of the awards to McBride and Harvey Tabler, but urges that the award to Bryan was not inadequate, and reflects the jury's belief that he was clearly free from negligence.

Indiana has long adhered to the rule that a new trial is proper where the damages awarded are so small as to indicate that the jury was motivated by "... passion, partiality, corruption or considered some improper element." *Henschen v. New York Central R.R. Co.* (1945), 223 Ind. 393, 399, 60 N.E.2d 738; *Rondinelli v. Bowden* (1973), 155 Ind.App. 582, 293 N.E.2d 812; *Wynder v. Lonergan* (1972), 153 Ind.App. 92, 286 N.E.2d 413; *Green v. Oakley* (1969), 145 Ind.App. 307, 250 N.E.2d 594.

Our brief examination of the evidence sustains the trial court's finding that the damages were inadequate. In the case of Carol Tabler, a young, healthy woman who worked with her husband in their dairy business, the inadequacy of an award of zero dollars needs no further comment. McBride lost $12,000 in wages, incurred $31,000 in medical bills, is 85% disabled, and will in all likelihood lose the use of his hands for his present occupation as well as for most others. An award of $7,500 does not begin to cover these damages. We disagree with the state that Bryan Tabler's award is adequate. While his was the largest award, it breaks down to about $3.16 a day for the rest of his life's expected length. When consideration is given to the effect the loss of his legs has on his social, educational and employment opportunities and the fact that he suffered excruciating pain during the accident and during the period of treatment and will continue to need therapy, the court's determination that $70,000 was inadequate is justified.

On the other hand, having correctly determined that the damages are inadequate does not necessarily mean that a trial court may properly grant a new trial on damages alone. Indiana Rules of Procedure, Trial Rule 59(E)(5) has been interpreted in *Borowski v. Rupert* (1972), 152 Ind.App. 9, 281 N.E.2d 502 to permit the trial court to grant a new trial limited solely to the issue of damages or, alternatively, additur. However, the court warned that a new trial on a single issue is proper only when:

"... it clearly appears that the issue to be retried is so distinct and separable from the others that a trial on it alone may be had without injustice." 281 N.E.2d 502, 506.

This constraint is particularly appropriate when inadequate damages are involved since they may be conclusive proof that the jury has compromised its verdict. *F & B Livery Co. v. Indianapolis Traction & Terminal Co.* (1919), 71 Ind. App. 203, 124 N.E. 493.

Prior Indiana decisions articulate no specific standard by which the propriety of granting a new trial limited to damages because of an inadequate verdict is to be judged. Other jurisdictions, however, have done so and appear to have considered the concerns expressed in *Borowski* and *F & B Livery Co.*

When the issue of liability is hotly contested and the evidence and inferences are conflicting and might have supported a verdict either for the plaintiff or the defendant, a grant of a new trial limited to damages is improper. *DeFreezer v. Johnson* (1967), 81 Ill. App.2d 344, 225 N.E.2d 46. Or, as stated in *Duncan v. Peoria Yellow Checker Cab Corp.* (1977), 45 Ill. App.3d 653, 359 N.E.2d 1242, a limited new trial is proper only when the evidence of liability is so clear that there is no issue on that point for a second jury to retry. In *Leipert v. Honold* (1952), 39 Cal.2d 462, 247 P.2d 324, 29 A.L.R.2d 1185, it was held to be an abuse of discretion to grant a limited new trial where the issue of liability was close and other evidence indicated the jury was motivated by prejudice, sympathy or compromise. Pennsylvania draws a logical distinction between limited new trials for inadequate damages and those for excessive damages. In the case of the former, the liability issue must be "free from doubt," "clear" and "uncontested," whereas in the latter, liability need only have been "fairly determined." The basis for the distinction is that inadequate damages "... inherently suggest that a compromise verdict has been returned and that the issue of liability has *not* been fairly determined." *Lambert v. PBI Industries* (1976), 244 Pa. Super. Ct. 118, 366 A.2d 944. California has pointed out that, generally, only when the jury's award is substantial but still inadequate can one conclude that they erred in respect to damages only. *Hamasaki v. Flotho* (1952), 39 Cal. 2d 602, 248 P.2d 910, 912-13. That case also referred to the disparity between the jury's award

and the additur imposed by the court as a "striking indication" that the jury could not agree on liability.

These cases lead to the conclusion that a new trial limited to damages because of an award of inadequate damages is proper only when it is clear that the verdict on liability is not the product of compromise. When liability is close and other evidence indicates the jury may have compromised, a new trial on damages alone is improper.

Applying that test to the evidence here, we conclude the grant of a limited new trial was improper. At trial appellees sought to establish that a series of asphalt joints connecting slabs of concrete on the stretch of pavement where Highway 24 narrowed into two lanes had welled up into ridges or bumps which caused the truck to jackknife as it passed over them. It was the state's theory that McBride was negligent in handling the fully loaded truck on a day when the pavement was wet.

One witness who worked at a gas station near the scene testified that the bumps were four to six inches high and had been there for several years. He could hear large trucks hit them while he worked at the station. He heard McBride's truck hit the second bump, and when he looked up, it was jackknifing. He also testified that the road was banked so that as a driver went through the slight curve where the road narrowed, the tendency was to throw the vehicle toward the westbound lane. He and Harvey Tabler testified they had driven that stretch of road before and encountered difficulty with the bumps. An expert witness, who had not viewed the road at the time of the accident, testified in response to a hypothetical question that a six inch bump could cause a tractor-trailer, loaded as McBride's was, to jackknife. He also testified that if the truck had hit a post on the left side of the road, that could also cause it to jackknife. There was testimony that a post was knocked down as a result of the accident. A representative of the highway department testified that he had viewed the area in June 1973, and that the joints had bumps, but that they were only 1½ to 2 inches high and did not constitute a safety hazard. He conceded the bumps might have been higher earlier. Two police officers called to the scene of the accident testified that they had noticed no defects in the road, no six inch bumps, and that while the road was not smooth, it was not dangerous either.

One also testified that he drove that stretch of the highway frequently and had been on it the day before the accident. The other officer testified that if he had seen a six inch bump he would have reported it.

McBride testified that he had driven his tractor-trailer over that same stretch of road approximately twelve times before the accident. He had driven it the day before the accident. He knew the pavement was rough there, but had never before encountered any difficulty. He stated the accident happened so quickly he did not know what caused him to lose control. He denied that he hit any wooden posts. He testified that his salary was based in part on the amount of weight his truck carried, and that he had driven trucks which were loaded beyond the legal weight limit but he did not drive several thousand pounds overweight. He stated that the legal limit for his truck was 73,280 lbs., that the weight of the truck itself was 23,000 — 24,000 lbs. and that he was carrying approximately 49,000 lbs. of fertilizer. It was brought out that no copies of the ticket for the trip on the day of the accident could be located.

Photographs taken at the time of the accident show the asphalt joints and do show that they are bumpy rather than smooth. While the photos do not indicate the height of the ridges, they do not appear to be six inches high.

There is present in this case evidence which supports both the appellees' and the appellant's theories of the cause of the accident. The fact that the jury awarded damages unrelated to the evidence of damages coupled with the close question of liability leads to the conclusion that they could not agree as to whose negligence caused the accident, but returned a verdict out of sympathy. While that motive may be understandable, particularly in a case with injuries of the nature involved here, it does not permit the trial court to award a limited new trial. Only a new trial on all the issues was permissible under these circumstances.

We therefore reverse that portion of the court's order limiting new trial to the issue of damages and remand for a new trial on all the issues.

Staton, J. and Chipman, J. concur.

NOTE—Reported at 381 N.E.2d 502.